**COMMONWEALTH of Kentucky, ex rel. DI- VISION OF UNEMPLOYMENT INSURANCE, Appellant,**

v.

**MILLER'S CREEK MINERAL DEVELOP- MENT COMPANY et al., Appellees.**

Court of Appeals of Kentucky.

June 17, 1955.

Gillard B. Johnson, Jr., Christopher C. Fishe, Frankfort, for appellant.

William Johnson, Paintsville, for appellees.

SIMS, Judge.

This is an appeal by the Commonwealth from an order of the Johnson Circuit Court adjudging defendant's chattel mortgage to be superior to the State's lien for unemployment insurance contributions. The only issue on appeal is whether KRS 341.310 gives the Commonwealth a lien for unemployment insurance tax superior to a chattel mortgage duly recorded before the tax became due and notice thereof was filed.

The only parties interested in this appeal are the Division of Unemployment Insurance of the Commonwealth of Kentucky, Miller's Creek Coal Cooperative, and its assignee, Miller's Creek Mineral Development Company. For the sake of clarity the latter two shall be referred to as Miller's Creek.

Miller's Creek held a purchase money chattel mortgage in the amount of $150,000 upon the personal property of the Whitehouse Coal Company (hereinafter referred to as Whitehouse). The mortgage was executed July 24 and recorded three days later on July 27, 1951. Whitehouse failed to pay its contributions to the Division of Unemployment Insurance for all four quarters of the year 1952, and the first quarter of 1953. The statutory lien of the Commonwealth arose on the due date of each taxable calendar quarter. KRS 341.310(1). Notice of the State's statutory lien for $7,333.95 was lodged March 11, 1953.

This action was filed by labor claimants for wages due from Whitehouse; Miller's Creek was named a party defendant. The United States of America filed an intervening petition for federal taxes. The federal tax lien was filed April 10, 1953, and adjudged inferior to Miller's Creek chattel mortgage. The Commonwealth intervened, seeking to collect its lien of $7,333.95, for the unpaid unemployment insurance contributions due from Whitehouse, whose property had been sold and was insufficient to satisfy its debts. The lower court adjudged the Miller's Creek chattel mortgage to be superior to all other liens. Only the Commonwealth has appealed.

The facts and question presented here are like those which were before this court in the case of Louisville Title Mortgage Co. v. Commonwealth, 1944, 299 Ky. 224, 184 S.W.2d 963. The statute there construed was the 1940 enactment which became KRS 341.310, and declared a lien, on a parity with tax liens, for unemployment insurance taxes. There, we held the vendor's lien, which was in existence before the lien for contributions arose, to be superior to the Commonwealth's lien for unemployment contributions.

But in 1948 the General Assembly amended the 1940 enactment, now KRS 341.310 (1), into its present form which reads:

"A lien *on a parity with state, county, and municipal ad valorem tax liens, and superior to the lien of any mortgage or other encumbrance heretofore or hereafter created* is hereby created in favor of the commission upon all property of any subject employer from whom contributions, interest or penalties are or may hereafter become due. This lien shall be for a sum equal to the amount at any time due from each subject employer to the commission on account of contributions, interest and penalties thereon. The lien shall commence from such time as the contributions, interest or penalties become due.

No action to enforce the lien created herein shall be brought after the expiration of five years after the date of filing the notice of lien." (Our emphasis.)

■ It is well settled the Legislature has the power to make taxes a lien upon property, as well as to fix the priority of such tax liens, and make them superior to mortgage or other liens existing against the property whether created before or after the assessment of the tax. Louisville Title case, 299 Ky. 224, 184 S.W.2d 963, at page 966; 51 Am.Jur., "Taxation", § 1016, p. 887. And from time immemorial a lien for ad valorem taxes has been superior to any kind of contract or statutory lien, including a vendor's lien, and notice of such tax lien has never been required to be given in order to make it paramount. See Louisville Title case, 184 S.W.2d headnote (3) at page 966. Thus, it would appear the General Assembly by its 1948 amendment of KRS 341.310(1) made the State's lien for unemployment insurance taxes superior to Miller's Creek mortgage lien.

However, subsection two of KRS 341.310 places certain limitations upon the operation of the foregoing priority of the State's lien by providing:

"(2) * * * The notice, when so filed, shall be conclusive notice to all persons of the lien on the property having legal situs in that county, except * * * [it shall not] affect the rights of any person taking the property or a lien thereon for value without actual or constructive notice. * * *"

This subsection two was changed in no material way by the 1948 amendment and acts as a hobbling limitation upon the first subsection of this statute. The first subsection attempts to put the State's liens on a parity with the lien for ad valorem taxes which requires no notice and takes preference over the rights of a bona fide purchaser or mortgagee. There can be no doubt that Miller's Creek was a bona fide mortgagee for value and without notice, as

its lien was recorded before the State's lien even came into existence.

■ By KRS 341.310(1) the General Assembly gave the State a lien of equal dignity with an ad valorem tax lien which takes precedence over a bona fide purchaser or mortgagee. But in the second subsection thereof the General Assembly said the State's lien should not take preference over a lien given for value and without actual or constructive notice of the State's lien. It would appear the General Assembly in amending the first subsection of KRS 341.310 attempted to circumvent the opinion in the Louisville Title case, 299 Ky. 224, 184 S.W.2d 963; yet, it intended to protect a bona fide lien for value and without notice which was recorded before notice of the State's lien was put to record. Taking this view of the legislative intent, we are constrained to hold the lien of Miller's Creek is superior to that of the State because Miller's Creek recorded its lien on July 27, 1951, while the first quarter upon which Whitehouse defaulted in paying its tax did not commence until January 1, 1952.

The Commonwealth interprets the second subsection of KRS 341.310 as protecting a bona fide lien for value and recorded without notice against the State's lien for taxes past due and unpaid, for which no lien had been filed; but that it does not protect such bona fide purchaser or lienee against future unemployment insurance taxes which may accrue and remain unpaid, because the first subsection puts the bona fide purchaser or lienee on notice that the State's lien is on a parity with ad valorem taxes.

We are not in accord with this interpretation of the sections of the statute under discussion for the reason pointed out in the Louisville Title case, 299 Ky. 224, 184 S.W.2d 963, at page 967. As there said, the title to an employer's property would remain under a cloud until the State's claim for unemployment insurance taxes is barred by limitations, since no one may know that at some future date there would not be a retroactive assessment of such taxes. Vendors, purchasers and lenders of money upon

duly executed and recorded written instruments would have their rights subordinated to a concealed or prospective lien, however innocent they might be. We cannot conclude the Legislature intended by the 1948 amendment to put a lien for these unemployment insurance taxes on a full parity with ad valorem taxes, else it would not have left subsection two of 341.310 in the form it did.

When we construe these subsections together, we are constrained to conclude the statutes are designed to give the Commonwealth's lien priority only in those cases where the subject employer incumbers his property after the Commonwealth's lien has accrued. In that situation the Commonwealth may protect its lien by filing proper notice. The statute was not designed to allow the Commonwealth priority over the obligees of the subject employer who have recorded their liens before the Commonwealth's lien accrued.

The judgment is affirmed.